SPEAKES LIME & CEMENT COMPANY, Respondent, vs. DU-
LUTH STREET RAILWAY COMPANY, Appellant.

*September 24—October 19, 1920.*

*Street railways: Negligence: Collision with automobile: Contribu-
tory negligence: Turning onto track: Question for jury: Evi-
dence: Beliefs and opinions of drivers of automobiles: In-
struction as to burden of proof.*

1. In the *first cause of action,* which was to recover for damages
   to two motor trucks struck by a street car when the drivers
   were attempting to clear. the track after passing another
   vehicle, the evidence is *held* to justify a finding of the jury
   that the street car was negligently operated, though there
   were no street crossings in the vicinity and no ordinance
   regulating the·rate of speed.
2. Where the drivers of the trucks saw an approaching street car
   about 1,100 feet away but believed they had time to pass,
   and did pass, a horse and wagon going in the same direction,
   by turning onto the·track on which they were struck, their
   contributory negligence was a question for the jury.
3. In the *second cause of action,* to recover for damages to a
   motor truck struck by a street car when the truck was on the
   track area entered in order to pass another vehicle approach-
   ing from the opposite direction, the evidence is *held* to justify
   a finding of negligence on the part of the motorman.
4. The driver of a motor truck who saw an approaching street
   car, believed he had time to pass another vehicle and started
   to do so, and was struck by the car before he had come fully
   on the track and when still twenty-five feet in front of the
   vehicle which he intended to pass. is guilty of contributory
   negligence as a matter of law.
5. The admission of testimony of the truck drivers that in turning
   onto the track they believed they had time to make the turn-
   ·,outs with safety and without interfering with street cars, is
   not prejudicial error in view of the other testimony in the
   case.
6. It was not prejudicial error to give an instruction that where
   a party has the burden of proof he must establish the truth
   of the proposition involved not only by a preponderance of
   the evidence, but must satisfy the jury of the existence of
   the fact in controversy.  The instruction given substantially
   follows the rule expressed in *Anderson v. Chicago Brass Co.*
   127 Wis. 273, and does not authorize the jury to follow its
   own prejudice or caprice·in determining the questions at issue.

APPEAL from a judgment of the superior court of Douglas county: SOLON L. PERRIN, Judge. *Reversed.*

The appeal is from a judgment given upon the verdict of a jury for damages found in two causes of action.

Both causes of action arose from collisions between a truck or trucks of the plaintiff company and a street car of the defendant company, in which both trucks and street cars were damaged. Both causes of action were for damages to the trucks and for the loss of their use. In both there were counterclaims for damages to the street cars and for the loss of their use. The facts were these:

*First cause of action:* Two of plaintiff's trucks, driven by its drivers and loaded with gravel, were proceeding southward along the west side of Tower avenue in the city of Superior on the evening of October 8, 1919. It was dark and the weather was somewhat thick, though not such as to interfere materially with seeing lights and traffic on the street. The trucks were equipped with lights and they were lighted. For some blocks in either direction from the point of the collision the street appears to have been constructed with a ditch or rough area along the westerly edge which could not be traveled by vehicles. Between this and the center of the street was a strip of concrete pavement ten feet wide. Within two or three feet of the pavement and along the central area of the street ran defendant's single-track car line. The situation was such that a vehicle had to enter upon the track area in order to pass another more slowly moving vehicle upon the concrete pavement. This portion of Tower avenue ran through virtually open country, and there were no intersecting cross streets open for travel.

As the two trucks proceeded they caught up to a horse-drawn vehicle. Desiring to pass, they turned to pass it on the left, entering the track zone. About as they turned they saw the light of an approaching street car. The testimony was that the car was then three or four blocks away. They believed that they had ample time to pass, and con-

tinued.  The first truck was delayed slightly in getting back
on the concrete by its wheel slipping along the raised edge
of the pavement.  Just before it could clear the track the car
struck it and carried it back and against the second truck,
damaging both as well as the car.

There was evidence both that the car was traveling at an
unusually high speed and that it was traveling at a normal
speed for that section of the line.

The motorman of the car testified that he first saw that
there was a vehicle on the street when about 200 feet from
the truck, saw only one light then, and that the truck swung
upon the track when about seventy-five feet from the car.
The rails were slippery, and efforts to stop the car before
striking the truck were unsuccessful.

*Second cause of action:*  One of plaintiff's trucks, driven
by its driver, had discharged a load and was proceeding
northerly on the same Tower avenue on the morning of
September 22, 1919.  The day was clear, the light good.
The east or right-hand side of the street was closed to travel,
and the truck driver was therefore proceeding on the west
side.  The physical situation was otherwise similar to that
in the first cause of action.

As the truck proceeded it approached a horse-drawn
vehicle which was coming southerly along the street.  The
truck driver testified that he looked back to see if a car was
approaching which might interfere with his passing the
vehicle, and seeing one some two and one-half blocks back of
him believed that he had ample time to pass.  He testified
that as soon as he drew his head in from looking he turned,
but was struck from behind by the car before he had turned
completely off the concrete and when there were still about
twenty-five feet between him and the horse vehicle.  The car
pushed the truck ahead and into the ditch, about two truck
lengths.  Both truck and car were injured.

The motorman of the car testified that he saw the truck
ahead of him driving close to the tracks but beside them;

that when about 150 feet back of the truck he blew his whistle and the truck turned toward the left away from the tracks; that he was then running about eighteen to twenty miles per hour, with the power off; that when he saw the truck turn toward the left he speeded up a little; and that when he was about fifteen feet back of the truck the latter suddenly turned on the track.   He didn't see the horse vehicle before the accident; he thought it must have been obscured by the truck.

There was no evidence that the car was going faster than the motorman testified except such inferences as may be drawn from the circumstances of the accident.

The jury were directed to find a special verdict, and their findings so far as material are:

*First cause of action:* That defendant's motorman was guilty of negligence which proximately caused the damage to the trucks.   That neither truck driver was guilty of negligence.

*Second cause of action:* That defendant's motorman was guilty of negligence proximately causing the collision.   That the truck driver was not guilty of negligence.

Damages were assessed for each truck and car separately.

The defendant made the usual motions and they were severally denied.   Judgment was then entered in favor of plaintiff upon the special verdict, and this appeal is taken therefrom.

For the appellant there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *W. P. Crawford.*

For the respondent there was a brief by *W. M. Steele,* attorney, and *Steele & Tipton,* of counsel, all of Superior; and the cause was argued orally by *W. M. Steele.*

JONES, J.   In the first and most important cause of action appellant's attorneys rely greatly on the facts that there was no ordinance restricting the rate of travel at the

point where the accident occurred; that for a long distance there were no intersecting streets, and that no danger was to be apprehended of travel across the track; that the drivers of the trucks were aware of the rate of speed usually traveled by the street cars, and, as claimed, that they observed that at the time in question the street car was going faster than usual. Appellant's counsel also lay great stress on the fact that this was not the usual case of a collision at a street crossing, and argue that this case must be distinguished from that class of cases. It is argued that the drivers of the trucks saw the approaching car in time to avoid the collision and that they should have slowed up or stopped their trucks.

It is claimed by respondent's counsel that the street car was going at the rate of more than forty miles an hour, and there was considerable testimony, which it is unnecessary to detail, from which the jury could have reached that conclusion.

It is true there were no street crossings for some distance from the scene of the accident and there was no ordinance regulating the rate of speed. But these facts would afford no excuse for running the car so rapidly that it could not be controlled so as to avoid injury to those lawfully and properly using the street with ordinary care. There was a good deal of travel on the street by all kinds of vehicles. The travel was practically confined on either side of the track to the strip of concrete ten feet in width, which was only seven inches from the overhang of the car. No vehicle could pass another without passing upon the street-car track. The motorman did not see the truck until within a distance of 200 feet of it and did not see the horse and wagon at all. The headlight on the car was so constructed that it did not cast a light which would reveal vehicles at the side of the road.

All these were circumstances which the jury had the right to consider in passing on the question of defendant's negli-

gence, and we cannot say that the jury were not justified in their findings on that issue.

The objection that the plaintiff was guilty of contributory negligence is more serious. The drivers of the trucks were going at a speed of about fifteen miles an hour upon a street of the character already described, when, as they overtook a horse and wagon going slowly, they saw defendant's car coming toward them three or four blocks, or 1,110 to 1,480 feet, away. There was no obstruction of the view and nothing to divert attention from the approaching car.

It is the testimony of the driver of the first truck that on first seeing the street car about three blocks away he did not observe that it was going unusually fast, but did notice it on looking the second time when he had entered on the track. When he saw the car he estimated that he easily had time to pass the horse and wagon in safety. On account of the rough space between the track and the concrete on the westerly side the driver was slightly delayed and had some unexpected difficulty in passing the horse and wagon. In this calculation he was mistaken, and after he had the front part of the truck back upon the concrete the street car struck the front left corner of the box, which was located about eleven feet back of the front end.

The jury may well have believed that if the street car had been going at the rate of twenty-five or even thirty miles an hour no collision would have happened. There is sufficient evidence that the truck driver was not mistaken as to the distance of the street car from him when he commenced to turn upon the track. Nor could he then determine that the car was coming at an excessive rate of speed.

Although this case differs from most of those cited in that the accident was not at a street crossing, we are not convinced that the rules declared by this court as to crossing cases are entirely inapplicable. In *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, 119 N. W. 833, the plaintiff saw a car approaching at a distance of about 900 feet. He be-

lieved that he had time to turn his horse around and cross in safety. It proved that he was mistaken, and the court held a nonsuit improper. In that case there was involved not only the crossing of a street but the turning around necessary to accomplish it. In the present case the street-car zone, under the conditions existing, had to be used every time vehicles passed each other, and we see no reason for laying down any new rule as to negligence.

In the *Grimm Case* the following paragraph was quoted from *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823. It was also quoted with approval in the recent case, *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 4, 171 N. W. 699:

"A person desiring to cross a street-car track in advance of an approaching car has the right of way if, calculating reasonably from the standpoint of a person of ordinary care and intelligence so circumstanced, he has sufficient time, proceeding reasonably, to clear the track without interfering with the movement of the car to and past the point of crossing, assuming that it is moving at a reasonable and lawful rate of speed. If a person, exercising his judgment as indicated, attempts to cross the track, and it turns out that he has miscalculated, he cannot be held guilty of a breach of duty to exercise ordinary care. If in the circumstances stated, other than the speed of the car, the car is approaching at an unlawful rate of speed, and it is observable by the person about to cross the track, by the exercise of ordinary care, he must take that into consideration in determining whether there is time to safely clear the track; the duty to exercise ordinary care for his own protection not being excused by the fault of anybody else."

On the street in question it was just as legitimate a use of the track of defendant to pass a team as to use it in crossing a street. As in the cases cited above, the question seems to be whether the drivers of the motor trucks used ordinary care under all the circumstances in calculating that they had sufficient time, proceeding reasonably, to clear the track without interfering with the movement of the car,

assuming that it was moving at a lawful and reasonable rate of speed.  We are convinced that it was a proper question for the jury.

In the second cause of action the damages allowed were only $83.15.  The damages to the street car, as found by the jury, were but $46.50.  There was much less testimony as to the manner of the collision, and the printed arguments were comparatively brief.

The jury found that defendant's motorman in charge of the car was negligent.  Evidence of negligence was certainly more meager than in the first cause of action.  There was no direct evidence that the car was traveling faster than the speed testified to by the motorman.  The motorman testified that he was going eighteen to twenty miles per hour as he approached defendant's truck, and speeded up somewhat after he had reason to believe the truck driver knew of his approach.  The jury may have felt that this speed was unreasonable in view of the use of the street, its type of construction, and the restricted area then open for travel.  The jury may have felt that the motorman's failure to see the horse-drawn vehicle approaching and about to meet the truck evidenced lack of care.  The jury may have believed there was a lack of proper warning of the approach of the car, and may have drawn inferences of unreasonable speed and lack of control from the circumstances and results of the collision.  We cannot say as a matter of law, under the evidence presented, that the jury were not justified in finding that the motorman was guilty of negligence.

The jury also found that the truck driver was not guilty of negligence.  The verdict stands upon far less secure ground here, if in fact any credible evidence can be found to support it.  The facts as to contributory negligence differ radically from those in the first cause of action.  There the truck drivers saw the car, believed they had time to pass, did pass, were unexpectedly delayed in getting back

off the tracks, and yet missed clearing the car by a narrow margin. These facts, taken in connection with the fact that the jury might well have found that the car was traveling very fast, justified the jury in concluding that the truck drivers were not negligent. In this cause of action, however, the testimony of the truck driver himself was that he saw the car,—it was closer than in the first cause of action,—believed he had time to pass, started to do so, and was struck before he had come fully upon the track and when he was still twenty-five feet in front of the vehicle he intended to pass. He did not miscalculate by a few feet. His calculation, if he made one, was grossly inaccurate. The collision could not have occurred as he stated unless, to compute from the most conservative of the figures he testified to, the car had traveled the two and one-half blocks from about where it turned on the main track from a switch at an average speed of seventy-five miles an hour. To compute from the figures used by plaintiff's counsel in their brief the average speed must have been 120 miles or more an hour.

That the car was making such a speed is incredible and contrary to all the direct evidence in the record. That if it were making such a speed it would have been evident to any one looking at it within two and one-half blocks seems certain. To enter the tracks under such circumstances would be negligence. The conclusion from the evidence seems to us inevitable that the truck driver did not exercise the care of an ordinarily prudent man under the circumstances, and that he did not make and act on any reasonable calculation of his chance to pass without any interference with the car moving at a reasonable speed, as was his duty as laid down in the cases cited above.

In our view of the case the truck driver was guilty of negligence as a matter of law. The trial judge erred in not granting defendant's motion to change the answers of the jury to questions 10 and 14 of the special verdict.

Appellant's counsel assign as error that in both causes of action the drivers of the trucks, over objection, were allowed to testify in substance that they believed that they had time to make the turnouts with safety and without interfering with the street cars.

It is argued that the witnesses were thus allowed to give their beliefs and opinions as to the ultimate issue in the case. With this view we do not agree. When there were cars in sight it was certainly necessary for the drivers to use their judgment before entering upon the tracks. If they had not testified to so doing the jurors might have drawn unfavorable inferences. The real question at issue was not whether they believed they were safe and would not interfere with the street cars, but whether from the standpoint of a person of ordinary care and intelligence under all the circumstances they acted reasonably. Although the subject of the admissibility of such evidence is not discussed in the *Tesch Case* and the *Dahinden Case,* above cited, it is mentioned in both that the plaintiff thought or estimated that he had time to make the crossing without injury. If in this case the testimony had been excluded, we cannot believe, in view of the other testimony, the acts of the drivers, and their instinctive regard for their own safety, all of which would have been considered by the jury, the verdict would have been different. We hold, therefore, that in the reception of this testimony there was no prejudicial error.

The following instructions were given to the jury:

"When in these instructions I have charged you that the burden of proof rests upon a party plaintiff or a party defendant to this action, you are instructed that in order to establish the existence of a fact it is incumbent upon the party upon whom the burden of proof is cast to establish the truth of the proposition involved, to your satisfaction, by a preponderance of the credible evidence in the case, and you must be satisfied by a preponderance of such evidence

that such fact does exist; unless you are so satisfied your finding should be against the party upon whom the burden of proof is cast. . . . If the evidence is so evenly balanced that you cannot determine upon which side it preponderates, or if it preponderates against the party on whom the burden of proof rests, or if it preponderates in favor of the party upon whom the burden of proof is cast, and, notwithstanding such preponderance, you are not satisfied of the existence of the fact in controversy, your finding should be against the party on whom the burden is cast."

It is urged by appellant that by these instructions the jury were permitted to decide the ultimate questions involved by some other rule than that of the preponderance of the credible evidence in the case. We do not construe either of these instructions as authorizing the jury to follow its own prejudices or caprice in determining the questions at issue. On the contrary we believe the instructions substantially followed the rule expressed in *Anderson v. Chicago B. Co.* 127 Wis. 273, 280, 106 N. W. 1077, as follows:

"It is well settled by a long series of decisions in this court that the party upon whom rests the burden of proof does not lift that burden by merely producing a preponderance of evidence. He may produce a preponderance, that is, he may produce evidence of slightly greater convincing power to the mind than that produced by his opponent, but still his evidence may be weak and leave the mind in doubt. In order to entitle himself to a finding in his favor his evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the minds of the jury of the truth of his contention. This idea, in some definite and certain form, must be given to the jury or the instruction will be incomplete and erroneous." Citing numerous cases.

We are satisfied that in giving these instructions no prejudicial error was committed.

Objection was made to evidence on the question of damages and that the damages are excessive, but we find no reason for reversal on that ground.

It follows from the conclusions reached by us that the counterclaim of defendant is not sustained.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings in accordance with this opinion. No costs allowed in this court except clerk's fees, to be paid by appellant.